

EXHIBIT 21
Trojan Battery Company (Bob Pigott)
10/31/2022
Steno: Barbara Carey, RPR



YAMAHA MOTOR MANUFACTURING CORPORATION OF AMERICA

November 13, 2012

Mr. David Godber
Trojan Battery Company
12380 Clark Street
Santa Fe Springs, CA 90670

Subject: Notification of Intent

Dear David,

The purpose of this letter is to document that, subject to the pricing statement included herein and the terms and conditions attached hereto, from June 15, 2012 through June 15, 2014, Trojan Battery Company (Trojan) has supplied and will continue to supply Yamaha Motor Manufacturing Corporation of America (YMMC) with deep cycle flooded batteries for Yamaha brand golf cars in unit volumes equal to one hundred percent (100%) of YMMC's unit purchases of such deep cycle batteries for Yamaha brand golf cars manufactured by YMMC.

Trojan will sell Trojan branded batteries and accessories in accordance with the price sheet (effective June 15, 2012); **Addendum A**; which reflects a base price reduction of $4.49.

Trojan warrants that the prices for all products sold to YMMC hereunder are no less favorable than Trojan extends to any other customer that competes with YMMC. If Trojan reduces its prices to any other customer that competes with YMMC, Trojan agrees to reduce the prices to YMMC for such products correspondingly. From time to time, during the term of this Agreement, Trojan agrees, upon request from YMMC, to provide YMMC with evidence of its compliance with the obligations set forth in this paragraph.

The battery prices listed herein may be adjusted on a monthly basis only for changes in lead costs, and such adjustments must be in an amount that is directly proportional to current scrap and LME-based lead formula adjustments that Trojan and YMMC have been using. Trojan warrants that prices shown herein are complete, and that no additional charges of any type will be added without YMMC's express written consent.

Trojan agrees to absorb one hundred thirty percent (130%) of all other material cost increases in the aggregate and will only increase pricing to the extent such cost increases exceed one hundred thirty percent (130%) of such other materials cost in the aggregate


Trojan EV & GCC
DTX-19
No 4:21-cv-03075

Highly Confidential – Attorney's Eyes Only                                                                     TROBAT0000508

as of the Effective Date. Parties agree increases above 130% may only be passed on to YMMC to the extent they are directly supported by data from a nationally recognized commodities index (Chemical Data Index for plastic resins and/or Rubber Trade Association for separators). Similarly, to the extent such other material costs decrease to an amount that is equal to or less than seventy percent (70%) of such other material costs in the aggregate as of the Effective Date, the savings from such decreases shall be passed on to YMMC based upon the same commodities indices referred to above. Trojan shall also make available supplier component pricing formulas or other documentation as required.

| Material | Index | Cost (Unit) | Date |
|---|---|---|---|
| Polypropylene Resin | CDI- Chemical Data Index | .855 per lb. (bulk) | June 2012 |
| RSS-1 Rubber | RTA 3 mo. Forward +.02 transportation Cost | 1.961 per lb. | June 2012 |

Trojan will implement a new lead adjustment formula for pricing effective on February 15th, 2013, which will be communicated to YMMC at least forty-five (45) days in advance. In no event shall such new lead adjustment formula result in base price increase to YMMC, and at any time during such forty-five day period, YMMC shall have the right to terminate this Agreement if the adjustment is unacceptable, based upon the sole and exclusive discretion of YMMC, and the parties are unable to come to mutual agreement on a new lead adjustment formula.

During the Term of the Agreement, there shall be no change in the price of the Products due to any change in Trojan's overhead rates, labor rates, or YMMC's volumes. Trojan and YMMC further agree to engage in discussions regarding a one percent (1%) annual rebate Trojan may provide to YMMC for the purpose of covering warranty and maintenance costs.

As stated at the outset, the additional Terms and Conditions governing this Agreement are attached hereto and incorporated herein by reference. YMMC only purchases using the Terms and Conditions of Contract that are attached to this letter. Please contact me if you have concerns with any of the elements of our Terms and Conditions. Otherwise, please return to my attention, using the information provided in the footer below, a signed copy of this Notification, accepting all of the Terms and Conditions included herein and attached hereto.

YMMC is excited to continue working with Trojan, and we look forward to strengthening this mutually beneficial business relationship with your company in the coming years.

In witness whereof, the parties hereto have, by their duly authorized representatives, executed this Agreement.

Sincerely,

*[signature: Wayne H. Pierce]*

Wayne H. Pierce
Purchasing Division Manager
Yamaha Motor Mfg. Corporation


Agreed and Accepted:

*[signature: David Godber]*　　　　　　　　　　　　　November 13, 2012
David Godber　　　　　　　　　　　　　　　　　　　　Date
Trojan Battery Company

Highly Confidential – Attorney's Eyes Only                                                                                    TROBAT0000510

# ADDENDUM A



## Yamaha Motor Manufacturing Corporation
### PRICE SHEET

| | | | | |
|---|---|---|---|---|
| Customer Account # | 10186 | Date: | May 11, 2012 | |
| Contact: | Clark Childers | *Effective Date: | June 15, 2012 | |
| | 1000 Georgia Hwy. 34 East | Expiration: | July 14, 2012 | |
| | Newnan, GA 30265 | Date Revised: | | |
| | | Delivery Terms: | FOB Origin Collect | |
| | | TBC Sales Person: | Brad Bisaillon | |
| | | E-mail | bbisaillon@trojanbattery.com | |
| | | Telephone: | 469-667-6598 | |

| Trojan Part Number | Customer Part Number | Trojan Description | Lead Weight | *Price |
|---|---|---|---|---|
| *8 Volt Deep Cycle* | | | | |
| 902263 | JR1-H2110-31-00-80 | T875 * | 40 | $ 87.72 |
| *6 Volt Deep Cycle* | | | | |
| 800378 | JN8-H211011 | T105 | 40 | $ 94.29 |
| *12 Volt Deep Cycle* | | | | |
| 902025 | JW2-H2110-00 | T1275 | 58 | $ 128.14 |

* - Net of $4.49 discount

Your Trojan Battery Customer Service Representative is: Renee Clavelot 888-787-6526 #2
rclavelot@trojanbattery.com

**EXPORTS/IMPORTS:** Trojan Battery Company will not engage in nor assist with illegal export or re-export of any products purchased from the USA. Anyone intending to export or re-export a Trojan product from the USA is solely responsible for obtaining all necessary licenses and compliance with all laws, regulations and policies of the U.S. Government.

***Effective Date:** Based on order "planned ship date" from Trojan Battery Company.

PL Yamaha     *Page 1 of 1*

Highly Confidential – Attorney's Eyes Only     TROBAT0000511

# YAMAHA MOTOR MANUFACTURING CORPORATION OF AMERICA

## Basic Terms and Conditions

1.  **RELATIONSHIP, QUANTITY, ETC.:** If the parties have not executed the "Yamaha Motor Manufacturing Corporation of America Supplier Terms and Conditions" (the "Supplier Agreement"), the Basic Terms contained herein shall control. If the parties have entered into the Supplier Agreement, the terms of the Supplier Agreement shall control. If the parties have not executed a Supplier Agreement, this "Notification of Intent" shall be deemed an offer by Yamaha. Acceptance of Yamaha's Notification of Intent is limited to the express terms contained in the Notification of Intent and these Basic Terms or the Supplier Agreement as applicable. Yamaha's Notification of Intent, the Basic Terms, and the Supplier Agreement are the complete and exclusive statement of the terms of the agreement between Trojan Battery Company ("Seller") and Yamaha Motor Manufacturing Corporation of American ("Yamaha") and shall supersede all prior oral or written representations, proposals and agreements. Yamaha shall have no liability should actual orders differ from any projections provided to Seller by Yamaha. Actual purchase quantities will be ordered via the purchase order matrix issued by Yamaha. Adjustments to the purchase order matrix may be made via EDI. The purchase order matrix shall specify delivery dates that parts must arrive at Yamaha.

2.  **PRICE AND PAYMENT:** The price shown is effective from the effective date on the front of the Notification of Intent. Any change to the price shown must be agreed to in writing by both parties except as otherwise provided in the Notification of Intent. Seller agrees that the prices quoted in this Notification of Intent are firm and shall remain firm until all deliveries scheduled or forecasted have been completed, unless otherwise agreed in writing by both parties or as set forth in the Notification of Intent. The payment date is scheduled from the receipt date of the items. Payment Terms are Net 30 unless other terms have been negotiated and agreed to in writing. Credits due to rejections or discrepancies on paid invoices may be deducted by Yamaha from subsequent payments.

3.  **SHIPPING INSTRUCTIONS:** Time is of the essence. Seller agrees that goods ordered pursuant to this Notification of Intent shall be shipped in installments at such times and in such quantities as Yamaha shall direct, provided all orders shall provide for at least a three-week lead time, in full pallet quantities and consistent with projections. Seller will use all reasonable best efforts to deliver specified goods when directed according to the purchase order matrix or EDI, including, without limitation, employing workers on an overtime basis and shipping by airfreight with Seller bearing the additional expense in the event of a delay caused by Seller. Seller shall promptly notify Yamaha if delivery cannot be made as scheduled. Yamaha may refuse delivery of goods made in advance of the scheduled delivery or in excess of the scheduled quantities and may return to Seller or hold such goods, as Yamaha, in its sole discretion may determine, at Seller's expense. All shipments FOB Trojan plants at Yamaha's expense.

4.  **WARRANTIES:** Seller expressly warrants that all items furnished hereunder: are merchantable and free from defects in material and workmanship; are fit for the particular purpose intended by Yamaha as such purpose is known to Seller; and conform to the applicable specifications, drawings, samples, or other description referenced in this Notification of Intent. Seller has good title to the goods and will convey such good title to Yamaha. Inspection, testing, acceptance or use of items furnished hereunder shall not affect Seller's obligation under these warranties, and such warranties shall survive inspection, testing acceptance and use. Seller's warranties shall run to Yamaha, and its customer, successors, and assigns and to all users of such items. In addition to any other remedy Yamaha may have hereunder or under applicable law: Yamaha shall have the right to require Seller to replace or correct promptly defects in any items not conforming to the foregoing warranties, without expense to Yamaha, when notified of such nonconformity by Yamaha, or Yamaha, at Yamaha's option, may return nonconforming items to Seller, at Seller's expense, for a refund or credit of the sales price paid for such items. Seller warrants that the methods of manufacture of all items to be purchased by Yamaha hereunder do not infringe on the rights of any third party, provided, however, Seller's obligation shall not apply to products manufactured pursuant to detailed designs developed and furnished by Yamaha. In the event Yamaha and/or its affiliates determine that a recall campaign is necessary to remedy a breach of Seller's warranty or to comply with law, regulations, orders or other government requirements, the full cost and expense of such recall campaign shall be borne by Seller, unless Seller proves that there was no defect or deficiency in the good supplied hereunder.

5.  **YAMAHA PROPERTY:** All documents, specifications, tools, tooling, dies, molds, supplies and the like furnished by Yamaha or purchased by Yamaha from Seller will remain the property of Yamaha. With reasonable advance notice of not less than three (3) business days, any such property may be removed by Yamaha from Seller's premises. Seller will care for these items as a prudent custodian and will maintain the strict confidentiality of all trade secrets and other confidential business and technical information supplied by Yamaha to Seller (which shall include, without limitation, all drawings and specifications for items to be purchased under this

Highly Confidential – Attorney's Eyes Only

TROBAT0000513

Agreement,) and such obligation will survive the completion, termination or cancellation of these Basic Terms. In the event that Seller finds it necessary to transfer, move or return the tooling required to produce the part number shown, Seller will be responsible for all costs. Yamaha requires advance written notification at least thirty (30) days prior to the scheduling of the movement of any tooling. After notification is received from Seller, Yamaha will establish the quality requirements, lead-time and schedule for tooling transfer. Seller shall not allow any third party access to or use of such rights without Yamaha's prior written approval, which approval may be granted or denied by Yamaha in its sole discretion.

6. **INDUSTRIAL PROPERTY RIGHTS**: Seller shall not use patents, models, designs, trademarks, or any other industrial property rights or know-how made available by Yamaha in connection with the manufacture of items to be purchased by Yamaha hereunder, except in connection with the manufacture of such items. Seller agrees upon receipt of notification to promptly assume full responsibility for the defense of any suit or proceeding that may be brought against Yamaha or its agents for alleged patent infringement, as well as for any alleged unfair competition, resulting from similarity in design, trademark, or appearance of items to be purchased hereunder, and Seller further agrees to indemnify Yamaha and its agents against any and all expenses, losses, royalties, profits and damages, including court costs and attorney's fees, resulting from any such suit or proceeding, including any settlement and any judgment entered therein' provided, however, Seller shall not provide such indemnification for products manufactured pursuant to designs developed and furnished by Yamaha. Yamaha may be represented by and actively participate through its own counsel in any such suit or proceeding if it so desires at Yamaha's expense.

7. **INSPECTION**: Payment for goods shall not constitute acceptance thereof. Yamaha shall have the right to inspect all goods and to reject any or all goods that are defective or nonconforming. Goods rejected may be returned to Seller at Seller's expense and Yamaha may charge Seller all expenses of unpacking, examining, repacking and reshipping such goods. If Yamaha receives goods with a defect or nonconformity that is not apparent on examination, Yamaha may require replacement of such goods within a reasonable time after discovery. Nothing contained in this Notification of Intent shall relieve in any way Seller from its obligation of testing, inspection and quality control. Inspection or testing of, or failure to inspect or test goods by Yamaha shall not affect Seller's warranty or Yamaha's rights.

8. **TERMINATION**: The performance of work under this Notification of Intent may be terminated, in whole or in part, by Yamaha for Yamaha's convenience at any time and for any reason on Yamaha giving 90-days prior written termination notice to Seller. In such event, Seller shall immediately stop all deliveries of goods as instructed and observe any instructions from Yamaha as to goods being produced to Yamaha's specifications. Seller shall be paid reasonable compensation for costs incurred by Seller prior to the date of termination. These costs are limited to Seller's actual cost of material and work in process directly related to the requirements of the purchase order matrix or EDI, up to a maximum of parts ordered for the 4 week firm order period and the 12 week forecasted period. Either party may terminate the agreement between Yamaha and Seller for cause in the event of a default or breach by the other party following written notice to the breaching party and the failure of the breaching party to cure such default within 10 days (to the extent such default is curable). In such event, the breaching party shall be liable for, and shall hold the non-breaching party harmless from, any damages occasioned by the breaching party's breach or default. If it should be determined that Yamaha has improperly terminated a purchase order for default or breach, such termination shall be deemed to be for Yamaha's convenience.

9. **GOVERNING LAW**: Seller shall comply with all applicable federal, state and local laws, rules and regulations. The agreement arising pursuant to this Notification of Intent shall be governed under the laws of the state of Georgia. The parties expressly agree that the federal and state courts in the state of Georgia shall be the forum for any dispute arising hereunder. The United Nations Convention on Contracts for the International Sale of Goods shall not apply.

10. **FAILURE TO ENFORCE**: Failure to enforce remedies for specific breaches of the terms and conditions contained herein shall not operate to waive the right to enforce provisions in the future.

11. **ASSIGNMENT**: Neither party shall assign its rights or duties under the basic terms and conditions without written consent of the other party.

12. **TAXES, PERMITS & FEES**: Seller shall pay for and include all federal, state and local taxes direct or indirect upon materials, and pay all fees for and obtain all necessary permits and licenses, unless otherwise specified herein.

13. **HOLD HARMLESS**: Seller agrees to indemnify, save, hold harmless and at Yamaha's request, defend Yamaha, its officers, agents, and employees from any and all costs and expenses, damages, liabilities, claims, and losses occurring or

967109.02/OC
308999-00030/10-8-12/tcf/mel

Highly Confidential – Attorney's Eyes Only

TROBAT0000514

resulting to Yamaha in connection with the performance, or failure to perform, by Seller, its officers, agents or employees under these Basic Terms and Conditions, and from any and all costs and expenses, damages, liabilities, claims, and losses occurring or resulting to any person, firm, or corporation who may be injured or damaged by the performance, or failure to perform, of Seller, its officers, agents, or employees under these Basic Terms and Conditions. Notwithstanding any provision of these Basic Terms, neither party shall be liable to the other for any special or punitive damages (including, without limitation, loss of revenue, loss of use or injury to good will or reputation) arising under, in connection with or relating to a breach of the Notification of Intent, these Basic Terms or any purchase order.

14. **NOTICE OF DELAYS:** Whenever an actual or potential cause of delay occurs or threatens to delay Seller's performance of duties under a purchase order, Seller shall immediately notify Yamaha in writing. Seller shall keep Yamaha advised of all relevant information concerning such cause of delay, its effects on the schedule and of measures being taken to remove or avoid it.

15. **DEFAULT AND EXCUSABLE DELAYS:** Yamaha may cancel purchase orders in the event of a default by Seller of any of these terms and conditions, including without limitation Yamaha's determination that Seller's actions or inactions will endanger timely and proper completion of services or delivery of goods; following notice from Yamaha to Seller of such failure or breach and Seller's failure to cure within ten (10) days (or such shorter period of time, if commercially reasonable) of such notice from Yamaha. Seller shall reimburse Yamaha for any commercially reasonable additional cost incurred by Yamaha, if Yamaha purchases from third parties articles substantially similar and in the same quantity as the articles ordered under the relevant purchase order cancelled hereunder. In calculating any amount owed by Seller to Yamaha as commercially reasonable additional costs incurred by Yamaha pursuant to this Section 15, replacement battery purchase price costs shall be limited to $2.00 per battery. Seller however shall not be in default to the extent that performance of its obligations is prevented by reason of a Force Majeure event, which is a cause beyond the control and without the fault or negligence of Seller, such as fire, flood, earthquake, riots, acts of God, war, terrorism and public disorder.

16. **COMPLIANCE WITH THE LAWS:** Seller represents and warrants that it will comply with any and all applicable federal, state or local governmental laws, regulations and orders.

17. **CANCELLATION:** Yamaha may immediately cancel the agreement with Seller and/or a purchase order, without liability to Seller, in the event of any of the following or any other comparable events: (i) insolvency of the Seller; (ii) filing of a voluntary petition in bankruptcy by Seller; (iii) filing of any involuntary petition in bankruptcy against the Seller; (iv) appointment of a receiver or trustee for Seller; or (v) execution of an assignment for the benefit of creditors by Seller.

18. **MISCELLANEOUS:** Seller and Yamaha are independent contracting parties and nothing in the purchase order, including these Basic Terms and Conditions, shall make either party the agent, partner, joint venturer or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other. If any term of the purchase order, including these Basic Terms and Conditions, is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term shall be deemed reformed or deleted, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule and the remaining provisions of the purchase order shall remain in full force and effect. The purchase order, together with the attachments, exhibits or supplements specifically referenced in the purchase order constitutes the entire agreement between Seller and Purchaser and supersedes all prior oral or written representations, proposals and agreements.

967109.02/OC
308999-00030/10-8-12/tcf/mel

Highly Confidential – Attorney's Eyes Only

TROBAT0000515